# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: C.S.**

**No. 14-0021** (Randolph County 13-JA-13)

**FILED**

June 2, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father, by counsel Timothy H. Prentice, appeals the Circuit Court of Randolph County's December 10, 2013, order terminating his parental rights to the child, C.S. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, David H. Wilmoth, filed a response on behalf of the child supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in finding that his "Intent To Relinquish For Adoption The Unborn Child, [C.S.]" ("Intent to Relinquish") was invalid, in denying him a dispositional improvement period, and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the current abuse and neglect proceedings, the mother's parental rights to five older children were involuntarily terminated in three prior abuse and neglect proceedings. Petitioner was the biological father of two of these children, and he voluntarily relinquished his parental rights to those children during the associated abuse and neglect proceedings. In January of 2008, the mother's parental rights to her three eldest children were terminated after petitioner severely abused his son, C.P. Jr., who was then approximately ten weeks old. Petitioner's abuse resulted in skull and rib fractures, and such severe head trauma that C.P. Jr. required a partial lobotomy and multiple blood transfusions. As a result, the child, now six years old, remains significantly developmentally delayed. According to the circuit court, petitioner was criminally indicted for malicious assault and child abuse resulting in serious bodily injury in regard to this abuse; he later pled guilty to the lesser charge of child abuse resulting in bodily injury and was sentenced to a term of incarceration of one to ten years. Petitioner was released after two and a half years of incarceration.

In September of 2009, the mother's parental rights to a fourth child were terminated after the DHHR filed an abuse and neglect petition alleging aggravated circumstances, though this child was not petitioner's biological child. In December of 2011, after petitioner's release from incarceration, he and the mother had another child, and the DHHR again filed an abuse and neglect petition alleging aggravated circumstances. During the proceedings, petitioner

1

voluntarily relinquished his parental rights to this child and the mother's parental rights were involuntarily terminated.

On March 22, 2013, the mother gave birth to her sixth child, C.S. Petitioner is C.S.'s biological father. Approximately one month prior to the child's birth, petitioner and the mother were married, and the two signed the Intent to Relinquish to demonstrate their intent to allow C.S. to leave the hospital in the custody of the mother's parents and later be adopted by them. However, the DHHR intervened and obtained emergency custody shortly after the child left the hospital. Based upon the mother's prior involuntary terminations of parental rights and petitioner's history of severe abuse, the DHHR filed an abuse and neglect petition against the parents on March 25, 2013. The maternal grandparents were initially joined as interested parties, but later withdrew their request for custody of the child at a July 2, 2013 hearing.

Petitioner waived his right to a preliminary hearing, and on May 13, 2013, the circuit court held a hearing to determine the validity of the parents' Intent to Relinquish. Because it was not signed at least seventy-two hours after the child's birth, as required by West Virginia Code § 48-22-302, the circuit court found the document invalid. On June 2, 2013, the circuit court held an evidentiary hearing to determine whether the conditions in the home had undergone a substantial change in circumstances since the prior termination of parental rights. Petitioner offered no evidence in support of his changed circumstances, other than a proffer by counsel that petitioner completed anger management and parenting classes while incarcerated. As such, the circuit court declined to find that the parents made a substantial change in their circumstances. Thereafter, the circuit court held a dispositional hearing, at the conclusion of which it terminated petitioner's parental rights to the child. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's finding that the Intent to Relinquish was invalid or in terminating petitioner's parental rights without a dispositional improvement period.

According to West Virginia Code § 48-22-302, "[n]o consent or relinquishment may be executed before the expiration of seventy-two hours after the birth of the child to be adopted." It is uncontroverted that petitioner and the mother executed their Intent to Relinquish prior to the child's birth and failed to execute a proper document following the statutorily mandated seventy-two hour period after the child's birth. While petitioner argues that the Intent to Relinquish should have been considered valid because of his express intention to later comply with the necessary post-birth documents, the record is clear that no such documents were ever executed. This is in spite of the fact that petitioner had custody of the child beyond the seventy-two hour period required to execute a valid document consenting to the child's adoption. As such, the circuit court was correct in finding that the invalid document did nothing to protect C.S. because "the [parents] could at any time later reassert parental rights to the child." Accordingly, the circuit court found that the lack of a valid Intent to Relinquish made "[c]ourt intervention . . . absolutely necessary." Because petitioner failed to comply with the requirements of West Virginia Code § 48-22-302, the circuit court was correct in finding the Intent to Relinquish invalid.

Further, the circuit court did not err in denying petitioner's request for a dispositional improvement period. Pursuant to West Virginia Code § 49-6-12(c)(2), a circuit court has discretion to grant a dispositional improvement period if the parent "demonstrates, by clear and convincing evidence, that [he or she] is likely to fully participate in the improvement period . . . ." The record here is clear that petitioner could not satisfy this burden. Petitioner's assertion that he completed parenting and anger management classes in prison is both unproven and insufficient in terms of satisfying his burden in regard to obtaining a dispositional improvement period. Simply put, petitioner has failed to accept responsibility for his actions regarding the severe abuse inflicted upon his older child, C.P. Jr.

In his appellate brief, petitioner plainly states that "the injuries to [C.P. Jr.] were accidental." Further, petitioner states that he entered his guilty plea in the associated criminal case pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), which allows criminal defendants to enter guilty pleas without actually admitting guilt. This is in spite of the fact that expert medical testimony in the prior abuse and neglect matter established that C.P. Jr.'s injuries were so severe that they could not have been caused accidentally or in a manner consistent with the parent's explanation of events.

We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, --, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). By petitioner's own admission, he still contends he did nothing wrong in regard to the substantial injuries inflicted upon C.P. Jr. As such, it is

clear that petitioner failed to acknowledge the existence of the prior abuse that child suffered and continued to endanger C.S. by refusing to remedy the issues that led to the prior abuse and neglect proceedings. As such, the circuit court was correct to deny petitioner an improvement period, as the same would have amounted to nothing more than "an exercise in futility" at C.S.'s expense.

Further, this evidence supports the circuit court's termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-6-5(b)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child . . . ." As noted above, petitioner's continued failure to accept responsibility for C.P. Jr.'s abuse resulted in a significant danger to C.S. While petitioner argues that he participated in parenting and anger management classes while incarcerated, the fact that he continues to deny his responsibility for C.P. Jr.'s severe abuse illustrates that he was unwilling to comply with rehabilitative efforts designed to protect C.S. The evidence supports the circuit court's findings that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings.

For the foregoing reasons, we find no error in the decision of the circuit court and its December 10, 2013, order is hereby affirmed.

Affirmed.

**ISSUED**: June 2, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II