# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

November 24, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: K.C. & E.W.**

**No. 14-0493** (Cabell County 11-JA-86-89)

## MEMORANDUM DECISION

Petitioner Mother, pro se, appeals the Circuit Court of Cabell County's April 24, 2014, order terminating her parental rights to K.C. and E.W. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian") for the children, Robert E. Wilkinson, filed a response on behalf of the children supporting the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in denying her notice of her parental rights being terminated and erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2011, the DHHR filed an abuse and neglect petition alleging that K.C. was being molested by petitioner's boyfriend. The petition followed the child's disclosure to her great-aunt, after which an intake assessment was prepared and the child underwent a medical examination. According to the petition, a nurse who examined the child noted that petitioner did not appear to believe the sexual abuse allegations. A DHHR employee spoke with petitioner and also noted that petitioner did not appear to believe the child's allegations. Shortly thereafter, the children were placed in their great-aunt's home. Following a hearing in June of 2011, the circuit court ordered that petitioner have supervised visitation with the children.

The next month, the circuit court held a hearing and found probable cause that the children were in imminent danger "because of [petitioner's] adamant denial of the sexual abuse allegations against [her boyfriend] and because of her hostile attitude toward K.C." The circuit court held an adjudicatory hearing in August of 2011, but ultimately held that issue in abeyance so that additional evidence could be submitted. Following a hearing in September of 2011, the circuit court suspended supervised visitation with petitioner. However, visitation was later be reinstituted.

During a hearing in February of 2012, the circuit court noted that the DHHR only had contact with petitioner once since the prior hearing in order to notify her of a physical exam for one of the children and a change in visitation. Petitioner became upset with the DHHR

employee, used foul language, and hung up the phone during the conversation. Thereafter, in a court summary filed in October of 2012, the DHHR notified the circuit court that petitioner was continuing her relationship with her daughter's abuser.

During a hearing in December of 2012, the circuit court ordered that petitioner have no contact with her daughter's abuser. The circuit court also ruled that petitioner's motion for an improvement period would be held in abeyance and that petitioner was required to complete individual therapy. The circuit court further required that a multi-disciplinary treatment ("MDT") meeting be convened to develop a case plan for petitioner should she be granted an improvement period. During this hearing, the DHHR moved to terminate petitioner's parental rights, and it was at this point that petitioner first stated that she believed K.C.'s allegations of sexual abuse.

At the MDT meeting in December of 2012, petitioner was again reminded to cease contact with her child's abuser and his family and to attend individual therapy. The MDT also determined that if petitioner were granted an improvement period, she would need to undergo a parental fitness evaluation and follow the recommendations of the same. However, according to a court summary filed in February of 2013, petitioner not only continued to contact her child's abuser, but she also initiated a romantic relationship with the abuser's brother-in-law. During a hearing that same month, the DHHR again moved to terminate petitioner's parental rights. However, the circuit court granted petitioner an improvement period and set the matter for disposition ninety days after.

Petitioner submitted to a parental fitness evaluation in April of 2013. The evaluator specifically noted that petitioner "continued to have contact with [her child's abuser] and remained in a relationship with him until June, 2012 . . . despite the allegations of sexual abuse . . . and despite both of her daughters being removed from her custody . . . ." The evaluator also noted that petitioner "moved in with [the abuser's] family after being ordered to have no contact with him or his family and that she entered into a relationship with a member of his family . . . [and] is now suspected of cohabitating with [the abuser's] (former) brother-in-law."

During a hearing in December of 2013, the circuit court found that family counseling between petitioner and K.C. "[had] not been successful." As such, the circuit court set the matter for disposition. The therapist later filed a document with the circuit court addressing the issues that arose during therapy. Specifically, the therapist relayed information from the foster mother indicating that K.C. told her that petitioner threatened to "bust [the children's] butts" during a visitation, and otherwise used inappropriate language, even calling the children "ungrateful little bitches." During therapy, petitioner called K.C. a liar "at least three times." Ultimately, the therapist stated that petitioner "cannot possibly correct the problems that need to be corrected in order to regain custody of her children."

The circuit court then held a dispositional hearing in February of 2014, finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. As such, the circuit court terminated petitioner's parental rights to the children. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's termination of petitioner's parental rights.

To begin, petitioner's argument that she received no notice of an intention to terminate her parental rights to the children is without merit. The record is clear that the DHHR began moving for termination of petitioner's parental rights as early as December of 2012. Moreover, following the hearing in February of 2013, the circuit court specifically found that the DHHR filed a notice of intent to terminate petitioner's rights. The record further reflects that petitioner was present at this hearing. As such, the Court finds that petitioner had ample notice of the DHHR's intention to seek termination of her parental rights.

As to termination, the Court finds no error in this regard. Specifically, the circuit court found that "for approximately a year and a half [petitioner] did not support [K.C.], believe her disclosure, or assist the State in investigating or developing a case against [the child's abuser]." Moreover, the circuit court found that the child's therapist and other parties to the proceeding "believe[d] that there [was] an irreparable break in the relationship between" petitioner and K.C. The circuit court further found that petitioner failed to protect the children and continued her relationship with the abuser instead of protecting the children.

We have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As noted above, petitioner refused to believe the existence of the underlying abuse and neglect at issue; namely that her boyfriend sexually abused

3

K.C. Though petitioner ultimately claimed to believe the child's allegations when the DHHR moved for termination of her parental rights in December of 2012, the record does not support her claim. This is especially true in light of the child's therapist's revelations that petitioner continued to call K.C. a liar as late as January of 2014, and her continued relationships with the abuser and his family well into these proceedings.

While petitioner argues that she established that reunification with her children was appropriate because of her compliance with the terms of her improvement period, the record does not support this assertion. Conversely, the circuit court had ample evidence upon which to find that petitioner could not substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are required to terminate parental, custodial, and guardianship rights upon these findings.

For the foregoing reasons, we find no error in the decision of the circuit court and its April 24, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: November 24, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II