# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**April 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: I.W. and K.W.

No. 15-1097 (Roane County 15-JA-20 & 15-JA-21)

## MEMORANDUM DECISION

Petitioner Father R.W., by counsel Andrew S. Ryan, appeals the Circuit Court of Roane County's October 13, 2015, order terminating his parental rights to I.W. and K.W. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Anita Harold Ashley, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in denying his motion for a post-adjudicatory improvement period.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2015, the DHHR filed an abuse and neglect petition against the parents and alleged that they failed to properly supervise the children, two-year-old I.W. and three-year-old K.W. Specifically, the petition alleged that the mother left the children with inappropriate caregivers, including her mentally ill and violent cousin, and that the children were repeatedly found in and along the roadway unsupervised. The petition also alleged that on one occasion, K.W. consumed medication prescribed to the mother's cousin and was taken to the emergency room for treatment. As to petitioner, the petition alleged that he failed to supervise the children by virtue of his incarceration for attempt to commit wanton endangerment with a firearm. According to the DHHR, the mother was the victim of petitioner's crime. The circuit court held a

---

[1] We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. Further, the Court notes that while petitioner lists his assignments of error as including an allegation that the circuit court erred in terminating his parental rights, the argument section of his brief contains assignments of error concerning only the circuit court's denial of his motion for an improvement period. As such, the Court will address only this lone assignment of error in accordance with Rule 10(c) of the West Virginia Rules of Appellate Procedure.

1

preliminary hearing that same month. Petitioner did not attend but was represented by counsel. The circuit court found imminent danger to the children and continued custody with the DHHR.

In June of 2015, the circuit court held an adjudicatory hearing, during which petitioner stipulated to neglect for failure to supervise the children. The following month, petitioner filed a motion for a post-adjudicatory improvement period. In August and September of 2015, the circuit court held hearings to address petitioner's outstanding motion and disposition. At the hearings, the circuit court was presented with petitioner's psychological and parental fitness evaluation. This evaluation concluded that petitioner accepted no responsibility for his actions and, in fact, insisted that he was a victim of circumstance. Further, a DHHR employee testified that petitioner did not begin attending the required parenting education classes until after the initial dispositional hearing and missed appointments after initiating the service. It was also established that petitioner failed to submit to drug screens until shortly before disposition. According to the DHHR, aside from completing a psychological evaluation, petitioner failed to fully comply with a single service offered. At the conclusion of the final hearing, the circuit court denied petitioner's motion for an improvement period and terminated his parental rights to the children. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

Specifically, the Court finds no error in the circuit court denying petitioner's motion for a post-adjudicatory improvement period. Pursuant to West Virginia Code § 49-4-610(2)(B), a circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . ." The record is clear that petitioner failed to satisfy this burden. While petitioner argues on appeal that he acknowledged and admitted his mistakes as a parent and participated in the services offered, the Court does not agree. In fact, the record shows that petitioner not only failed to comply with services as directed, but he also failed to accept responsibility for his actions and blamed others for his failure to comply.

According to the record, as of July of 2015, petitioner had not yet submitted for any drug screens and failed to appear for his scheduled psychological evaluation. Further, petitioner failed to attend a multidisciplinary team ("MDT") meeting, despite his presence at the adjudicatory hearing when the MDT meeting was scheduled. While petitioner argues that he failed to participate in services because the DHHR failed to set them up, the record simply does not support this argument. This is especially true in light of testimony at the dispositional hearings in August and September of 2015 that established that petitioner was still not in compliance with the services offered. Although it is true that petitioner attended one parenting class, his provider testified that he failed to attend the next two scheduled classes. Most importantly, the record is clear that petitioner was told that compliance with drug screens was a prerequisite to visitation with his children. As such, his willful refusal to submit to drug screens during an extended period below prevented him from visiting with the children during the pendency of the proceedings. Again, petitioner failed to acknowledge that his own actions prevented him from interacting with his children, as he testified that he attempted to see them but Child Protective Services denied him visitation.

The record is also clear that petitioner failed to accept responsibility for his actions and their impact on the children, as his psychological evaluation found that petitioner "accepted no responsibility for his actions and insists he had been wronged and is a victim of circumstances." The psychologist that evaluated petitioner also testified at disposition and indicated that petitioner "tended to blame others for . . . all the negative circumstances that he was under." Further, petitioner was "hostile and belligerent" to staff while undergoing his evaluation, which resulted in a poor prognosis for parental improvement. This was based, in part, upon petitioner scoring high for potential future child abuse. Ultimately, his evaluator found that "there's no reason to think that services are going to improve [petitioner's] attitude toward the situation and his likelihood of being a better parent" because of his failure to accept responsibility for his actions.

This is further supported by petitioner's own testimony, wherein he stated that he did not commit the crime to which he ultimately pled guilty and for which he was incarcerated when these proceedings began. According to petitioner, he simply pled guilty to the charge because the criminal proceedings failed to resolve in a timely fashion and he wished them to end. Despite his conviction for this crime, petitioner continued to deny having committed the underlying acts and argues that his incarceration and subsequent failure to supervise the children was not a willful act. The Court, however, does not agree. Petitioner willfully committed acts that resulted in his incarceration and caused his children to receive inappropriate supervision. While petitioner argues that the conditions of abuse and neglect alleged against him were remedied upon his release from incarceration, the record is clear that even after his release, petitioner failed to acknowledge his inability to properly care for the children or attempt to remedy these conditions. In fact, petitioner continued to commit criminal acts beyond his release, as evidenced by his arrest for driving while intoxicated in September of 2015. As such, it is clear that petitioner failed to establish that he was likely to fully participate in a post-adjudicatory improvement period.

Additionally, we have previously held that

3

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Based upon this holding, it is clear that petitioner's failure to acknowledge the underlying conditions of abuse and neglect in the home rendered him unable to remedy those conditions. As such, we find no error in the circuit court denying petitioner's motion for a post-adjudicatory improvement period.

Finally, the Court finds no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected. On appeal, petitioner erroneously argues that such a finding is a prerequisite to denying a parent an improvement period. As noted above, in order to deny a parent an improvement period, West Virginia Code § 49-4-610 requires only a finding that the parent is not likely to fully participate in the same. However, to the extent that petitioner argues the circuit court erred in finding there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected, we disagree.

Pursuant to West Virginia Code § 49-4-604(c)(3), there is no reasonable likelihood the conditions of abuse or neglect can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." Based upon petitioner's willful refusal to acknowledge the conditions of abuse and neglect in the home, coupled with his failure to comply with the services offered, the circuit court had sufficient evidence upon which to find there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 13, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: **April 12, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin

Justice Margaret L. Workman
Justice Allen H. Loughry II