**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.L.-1 and A.L.**

**No. 24-143** (Kanawha County 23-JA-172 and 23-JA-173)

**MEMORANDUM DECISION**

Petitioner Father J.L.-2[1] appeals the Circuit Court of Kanawha County's March 1, 2024, order terminating his parental rights to J.L.-1 and A.L.,[2] arguing that the court improperly relied upon his incarceration as a basis for termination and that there were less restrictive dispositional alternatives. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In June 2023, the DHS filed a petition alleging that the petitioner abused illicit substances and committed acts of domestic violence against the mother in the presence of the children, which resulted in his incarceration on more than one occasion. The petitioner had recently been arrested for driving on a revoked license and possession of a firearm by a prohibited person, crimes resulting from an underlying conviction of domestic battery. Upon his arrest, law enforcement found methamphetamine and drug paraphernalia in the petitioner's vehicle.

The petitioner did not appear for the adjudicatory hearing that was held in September 2023, but was represented by counsel. Based on testimony from Child Protective Services ("CPS") workers, the mother, and the children's grandfather, the circuit court found clear and convincing evidence that the children were abused and neglected. Specifically, the court found that the petitioner had a substance abuse problem that negatively affected his parenting ability and that he

---

[1] The petitioner appears by counsel Bryan Escue. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Jennifer R. Victor appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the father and one of the children share the same initials, we differentiate them with numbers.

1

engaged in domestic violence in the presence of the children on numerous occasions. Therefore, the petitioner was adjudicated as an abusing parent. The court ordered that the DHS provide reunification services including drug screens, substance abuse treatment, adult life skills and parenting education, domestic violence counseling, a psychological evaluation, and supervised visitation if screening negative for substances. The petitioner thereafter filed a motion for a post-adjudicatory improvement period.

Prior to disposition, the guardian submitted a report, advising that the petitioner had recently been incarcerated. At the dispositional hearing held in January 2024, the circuit court took judicial notice of the petitioner's temporary jail commitment order, which stated that the petitioner was sentenced to three years on a felony count of possession of a firearm; however, the sentence was suspended for the petitioner to be committed to a correctional facility program. A CPS worker testified that due to the petitioner's incarceration, he was not participating in services and could not participate while committed to the correctional facility program. According to the record, the correctional facility program could last up to two years and, if the petitioner would be unsuccessful in completing its requirements, he would return to the original sentence of three years. Based on this length of time, the court noted the children's need for permanency. Considering his incarceration as "a factor," his failure and inability to participate in services, and his refusal to acknowledge any issues in this case, the court found no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, that termination was necessary for the children's welfare, and that there was no reasonable or available dispositional alternative. The court further noted that the petitioner did not present any evidence in support of his motion for an improvement period and denied the same, finding that he failed to demonstrate that he would be likely to comply with terms and conditions of a post-adjudicatory improvement period. The court ultimately terminated the petitioner's parental rights, and it is from this order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner argues that the court erred in terminating his parental rights on the basis of his incarceration, citing the following from our decision in *In re Cecil T.*:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

---

[3] The mother's parental rights were terminated by the same order, and the permanency plan for the children is adoption by a kinship placement.

*Id.* at 91, 717 S.E.2d at 875, Syl. Pt. 3. In consideration of the foregoing, the petitioner's argument has no merit as the petitioner's incarceration was not the *sole* factor considered. Indeed, the circuit court noted that the petitioner's incarceration was "a factor" in its decision. Nevertheless, the circuit court complied with the requirements of *In re Cecil T.* as it clearly evaluated the best interests of the children in light of the length of the petitioner's commitment to the correctional facility program and potential three-year sentence impacting his participation in reunification services and ability to remedy the conditions of abuse and neglect. Further, the court specifically noted the children's need for permanency, and we see no error in its conclusion. *See e.g. In re A.F.*, 246 W. Va. 49, 56, 866 S.E.2d 114, 121 (2021) (determining that termination was "necessary for the child to achieve permanency, security, stability and continuity" under the circumstances).

The petitioner further argues that the circuit court's finding that there were no less restrictive alternatives to termination was erroneous. However, the petitioner ignores our prior holding that circuit courts may terminate parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). The court specifically found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future, and this finding is supported by the evidence in the record. Critically, the circuit court noted that the petitioner did not appear for the adjudicatory hearing and found that he failed to acknowledge any issues in need of correcting. To that end, we have stated that "[f]ailure to acknowledge the existence of the problem . . . results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The petitioner insists that the children's permanency would not have been impacted by the court granting a less restrictive dispositional alternative, such as a guardianship in their current kinship placement, because he "could have continued to better himself and shown a change of circumstances to restore his parental rights." We disagree and point out that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980); *see also In re P.L.*, No. 2012 WL 4069554 at*4 (W. Va. Sept. 7, 2012) (memorandum decision) (determining that "establishing a guardianship and leaving [the] petitioner's parental rights intact would have been contrary to the best interests of the children"). The court here found that termination was necessary for the children's welfare based upon sufficient evidence, and we discern no error in its findings on appeal.

Accordingly, we find no error in the decision of the circuit court, and its March 1, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2025

3

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

4