**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **E.V. and J.H.**

**No. 24-216** (Berkeley County CC-02-2022-JA-141 and CC-02-2022-JA-142)

**MEMORANDUM DECISION**

Petitioner Mother K.V.[1] appeals the Circuit Court of Berkeley County's February 20, 2024, order terminating her parental rights to E.V. and J.H., arguing that the court erred by terminating her parental rights when there were less restrictive dispositional alternatives available.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In August 2022, the DHS filed a petition alleging that the petitioner physically abused and/or knowingly allowed another individual to physically abuse J.H. and that the petitioner neglected both children by failing to obtain necessary medical attention. The DHS further alleged that it received numerous referrals regarding E.V.'s failure to thrive while in the petitioner's care because the child, who was less than one year old at the time, was severely underweight and appeared gray. The DHS also alleged that DHS workers observed bruising across large portions of J.H.'s head and upper body. The DHS later amended the petition to include other adult respondents.

The circuit court held a series of adjudicatory hearings over the next several months. In December 2022, the petitioner stipulated to the allegations of neglect relating to her supervision of the children and failure to seek necessary medical attention, and the circuit court later entered an order adjudicating her as neglecting the children on this basis. However, the court then continued with a contested adjudication regarding the allegations of abuse. Over the course of

---

[1] The petitioner appears by counsel Jason T. Gain. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Tracy Weese appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For the purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

three hearings, the court heard testimony from a forensic nurse who examined both children and reviewed their medical records upon removal and two DHS workers who witnessed the children's injuries and medical issues. The forensic nurse testified that the injuries observed on J.H. were chronic and the result of nonaccidental trauma. Nonetheless, the petitioner denied that J.H.'s injuries were intentional and stated that they were from falling. However, she also testified that some of the injuries could have been caused by B.C., an individual with whom the petitioner sometimes left the child. The petitioner later acknowledged that B.C. was no longer watching J.H. for the petitioner when most of his injuries occurred. Finally, the court heard from two of the petitioner's relatives concerning their observations of the petitioner and B.C. Ultimately, the circuit court adjudicated the petitioner upon the additional allegations of physical abuse, finding that the petitioner's explanations for J.H.'s injuries conflicted with the medical findings of nonaccidental trauma and that her attempt to blame B.C. was undercut by her own testimony that B.C. was "out of the picture" by the time the most recent injuries occurred. The court further found that J.H.'s injuries were severe and in various stages of healing, indicating chronic abuse, and that the petitioner either did not make reasonable efforts to identify the abuser or was herself the abuser. Based on these findings, the court concluded that the petitioner abused and neglected both children, aggravated circumstances existed, and the DHS was not required to make reasonable efforts to reunify the family.

The circuit court held the first dispositional hearing in October 2022. At this hearing, the court heard from a Child Protective Services ("CPS") worker that the petitioner had moved to South Carolina without notifying the DHS and had not requested any services. Following this, a visitation supervisor testified as to the petitioner's interactions with the children, which did not go well. The visitation supervisor stated that, during visits, the petitioner mostly ignored the children in favor of her cell phone, physically disciplined J.H., and refused to clean up the children when they were sick.

At the final dispositional hearing in November 2022, the court heard testimony from a South Carolina Department of Social Services ("DSS") worker. The DSS worker explained that she received a referral after the petitioner gave birth to her third child in South Carolina. According to the DSS worker, the reasons petitioner gave for moving to South Carolina were to get away from her mother and "the drama" and that people kept trying to take her children away. The DSS worker testified that her investigation of the petitioner showed no abuse or neglect of the newborn child. Following this, the court heard from the petitioner, who stated that she moved to South Carolina for a new start. She further testified that a doctor's poor treatment of E.V. led to her decline in health while in the petitioner's care and repeated her assertion that B.C. was to blame for J.H.'s injuries. Based on the evidence, the court reiterated that J.H.'s injuries were nonaccidental and that the petitioner's attempt to blame B.C. was contradicted by the petitioner's admission that B.C. did not care for the child when he incurred most of his injuries. Accordingly, the court found that the petitioner was "the only possible source of the injuries" to the child. Despite rejecting the petitioner's claims about J.H.'s injuries, the court found that the petitioner "persisted in that explanation throughout the entire case, including her testimony at disposition." The court further found that the petitioner "never took responsibility for [E.V.'s] poor physical condition when the petition was filed." Because of the petitioner's failure to identify J.H.'s abuser or acknowledge the conditions of abuse and neglect at issue, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future.

Further, considering the children's young ages and vulnerabilities, the court found that it would be contrary to the children's welfare to return to the petitioner's care and that no alternative could assure the children's well-being. As such, the court terminated the petitioner's parental rights to the children. It is from the dispositional order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner makes several arguments in support of her position that the circuit court erred in terminating her parental rights despite the availability of less restrictive alternatives.

The petitioner first argues that the circuit court erred in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. The petitioner makes this argument despite recognizing that this Court has previously explained as follows:

> Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.

Syl. Pt. 3, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993). The petitioner claims that this holding is inapplicable because she "changed her environment" by moving to South Carolina and "is away from any person who abused J.H."[4] However, after considering that the petitioner's explanations did not comport with the medical evidence and that no one else had custody of the child at the time the injuries were inflicted, the court found that the petitioner was "the only possible source of the injuries" to the child. Therefore, we conclude that the circuit court did not err in finding that there was no reasonable likelihood that the conditions of abuse could be substantially corrected.

Next, the petitioner argues that the circuit court erred in relying upon *In re Timber M.*, 231 W. Va. 44, 743 S.E.2d 352 (2013), and finding that her denial of any responsibility for E.V.'s condition precluded the granting of any improvement period. In her argument, the petitioner draws

---

[3] The fathers' parental rights to E.V. and J.H. were also terminated. The permanency plan for the children is adoption in their current placement.

[4] The petitioner makes a semantic argument by focusing on a portion of the Court's opinion wherein we stated that this Court would "not place [the child] back into the environment where he suffered his abuse." *Id.* at 35, 435 S.E.2d at 173. However, it is clear that the "environment" to which the Court was referring was the parents' custody. *See id.* ("[W]e hold that parental rights may be terminated where . . . the infant child has suffered extensive physical abuse while *in the custody of his or her parents*." (emphasis added)). As such, the petitioner's interpretation of this holding is unavailing.

several factual distinctions between this case and *In re Timber*. However, the circuit court's citation to *In re Timber* simply references this Court's consistent holding that a parent's failure to acknowledge the causes of abuse and neglect results in those conditions being impossible to remediate. *Id.* at 55, 734 S.E.2d at 363 ("Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility." (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The record in this case shows that the petitioner either minimized or denied her own abuse and neglect of the children at all stages of the underlying proceedings. As such, the circuit court did not err in making findings on this basis.

Finally, the petitioner argues that the circuit court erred in finding that aggravated circumstances relieved the DHS of its duty to provide reasonable efforts to achieve reunification. West Virginia Code § 49-4-604(c)(6)(C) requires circuit courts to determine whether the DHS made "reasonable efforts to preserve and reunify the family." However, the DHS is relieved of this duty if the court determines that "[t]he parent has subjected the child . . . to aggravated circumstances which include . . . chronic abuse." *Id.* § 604(c)(7)(A). The petitioner argues that this language requires that "the parent" be the one who inflicts the chronic abuse, rather than a third party. However, a child is an "abused child" when their parent "knowingly or intentionally inflicts . . . *or* knowingly allows another person to inflict, physical injury or mental or emotional injury" upon them. *Id.* § 49-1-201 (emphasis added). As such, it is clear that a parent can subject a child to abuse inflicted by another individual, in keeping with this Court's long history of holding a parent accountable for abuse inflicted in such instances. *See In re Jeffrey R.L.*, 190 W. Va. at 25, 435 S.E.2d at 163, Syl. Pt. 2, in part (noting that the relevant statute defines "abused child to include one whose parent knowingly allows another person to commit the abuse" (quoting Syl. Pt. 3, *In re Betty J.W.*, 179 W.Va. 605, 371 S.E.2d 326 (1988))). As a result, it is clear that the DHS was relieved of its duty regardless of who inflicted the abuse, although we reiterate that the circuit court clearly found that the petitioner was the only party who could have perpetrated the abuse. Therefore, the circuit court did not err in finding that the petitioner's conduct constituted aggravated circumstances.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 20, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: May 6, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV