**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **L.M.**

**No. 24-33** (Ohio County CC-35-2023-JA-15)

## MEMORANDUM DECISION

Petitioner Father D.M.[1] appeals the Circuit Court of Ohio County's November 7, 2023, order terminating his parental, custodial, and guardianship rights to L.M., arguing that the circuit court erred in terminating his rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed its initial petition in February 2023, alleging that the petitioner failed to provide for the child, adequately supervise the child, or protect the child from the mother's abuse and neglect—including deplorable housing conditions and the mother's drug use.[3] The DHS also alleged that the petitioner engaged in domestic violence with the mother, to which the child had been exposed. The following month, the DHS filed an amended petition, including allegations of the petitioner's drug use and specifying additional incidents of domestic violence. The amended petition also cited the petitioner's criminal history, possibly resulting from untreated mental health issues.

---

[1] The petitioner appears by counsel Michael B. Baum. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney Katica Ribel. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Joseph J. Moses appears as the child's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below concerned additional children and respondents not at issue on appeal.

At an adjudicatory hearing in March 2023, the petitioner stipulated to his failure to protect the child from abuse and neglect; allowing the child to live in deplorable conditions; his history of substance abuse; his criminal history, including domestic violence; and to "generally arguing with [the mother] prior to the case being filed." On this basis, the circuit court adjudicated the petitioner as an abusive and/or neglectful parent, and L.M as an abused and neglected child.

Following the filing of a written motion, the circuit court entered an agreed upon order in April 2023 granting the petitioner a post-adjudicatory improvement period. The terms and conditions of the improvement period included, among other things, that the petitioner maintain sobriety, participate in drug screening, obtain intensive outpatient treatment for substance abuse issues, participate in a psychological evaluation and follow the provider's recommendations, participate in individual therapy sessions to address his mental health and anger issues, and participate in batterer intervention and prevention program ("BIPP") classes. At a status hearing in August 2023, the DHS expressed its wish to proceed to disposition, as the petitioner had continued to test positive for THC, had ceased drug screening, and "[did] not believe that he should be a part of [the] case."

The circuit court held a dispositional hearing in October 2023, during which the petitioner admitted to his failure to participate in all recommended services, including BIPP classes, and to screening positive for drugs throughout the improvement period. He also minimized his domestic violence issues. The court then heard from several other witnesses. The provider who conducted the petitioner's supervised visits testified that she never observed a bond between the petitioner and the child. She further testified that, during the improvement period, the petitioner told her that the child's mother was at fault, that he did nothing wrong and was being punished for no reason, and that Child Protective Services ("CPS") had illegally kidnapped his son. The doctor who administered the petitioner's psychological evaluation testified that the petitioner did not acknowledge his history of domestic violence and denied needing treatment for drug use. Despite the doctor's recommendation for anger management and psychotherapy, no evidence was presented that the petitioner ever sought to utilize these resources to address his anger issues. Per the petitioner's records from an outpatient treatment center, which were admitted into evidence, he sought assistance for substance abuse issues but missed several counseling sessions and was dishonest with counselors, claiming to be "clean" despite positive drug screens. The petitioner elected to stop treatment several weeks prior to the hearing. Finally, a CPS worker testified that during the petitioner's improvement period, he did not participate in drug screens as directed. When the petitioner did participate in drug screens, he consistently tested positive for marijuana and, on one occasion, for amphetamines. The CPS worker also testified that, in his communications with the DHS, the petitioner denied that the child's home had been in a deplorable condition.

Based on this evidence, the court found that the petitioner habitually abused or was addicted to drugs, seriously impairing his parenting skills, and that he had not responded to or followed through with the recommended treatment, which could have improved his capacity to function as a parent. The court further found that the petitioner had not responded to or followed through with a reasonable family case plan or other rehabilitative efforts designed to reduce or prevent the abuse and neglect of the child. Rather, the court stated the petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on his own or with help, also noting

the petitioner's "utter lack of compliance" with the post-adjudicatory improvement period. The court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future and that the child's best interests and welfare required termination of the petitioner's rights. Accordingly, the court terminated the petitioner's parental, custodial, and guardianship rights to L.M.[4] The petitioner now appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner asserts that the circuit court erred in terminating his rights to L.M., arguing specifically that the circuit court erred in failing to employ a less drastic method of disposition.[5] However, "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). There is sufficient evidence to support the circuit court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in this case. *See* W. Va. Code § 49-4-604(d) ("'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."). The petitioner's drug use continued unchanged throughout the proceedings, and he failed to respond to or follow through with the recommended treatment for substance abuse or with other rehabilitative efforts aimed at addressing his problems, including his history of domestic violence. Thus, the court reasonably concluded that there was no reasonable likelihood the conditions of abuse and neglect in this case could be substantially corrected in the near future. *See id.* § 604(d)(1), (3).

Further, the petitioner failed to acknowledge his culpability in the abuse and neglect of his child. "[I]n order to remedy [an] abuse and/or neglect problem, the parent must recognize and acknowledge that his . . . conduct constituted abuse." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013). As we have stated, "[f]ailure to acknowledge the existence of the problem,

---

[4] The mother's rights were also terminated. The permanency plan for L.M. is adoption by his foster family.

[5] The petitioner raises another assignment of error in which he alleges that the court erred in denying him a post-dispositional improvement period. However, the petitioner does not cite to his written motion for a post-dispositional improvement period in the record on appeal, nor does it appear such a motion was ever filed. *See* W. Va. R. App. P. 10(c)(7) (requiring the petitioner's brief to include "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal"). Further, as we have explained, "[a] circuit court may not grant an . . . improvement period . . . unless the respondent to the abuse and neglect petition files a written motion requesting the improvement period." Syl. Pt. 4, in part, *State ex rel. P.G.-1 v. Wilson*, 247 W. Va. 235, 878 S.E.2d 730 (2021). As such, the petitioner is entitled to no relief.

i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect . . . , results in making the problem untreatable." *Id.* (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Throughout the proceedings, the petitioner shifted blame to the child's mother and indicated his belief that he did nothing wrong. As such, the conditions are not treatable. The court additionally found, upon ample evidence, that termination was necessary for the child's welfare. Circuit courts are permitted to terminate a parent's rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (permitting the termination of parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the welfare of the child").

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 7, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: June 26, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV