**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.F., W.W., and P.W.**

**No. 24-734** (Harrison County CC-17-2023-JA-104, CC-17-2023-JA-105, and CC-17-2023-JA-106)

## MEMORANDUM DECISION

Petitioner Mother J.B.[1] appeals the Circuit Court of Harrison County's November 12, 2024, order terminating her parental and custodial rights to K.F., W.W., and P.W., arguing that the circuit court erred in denying her motion for a post-dispositional improvement period and terminating her rights because the DHS failed to file a family case plan.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in August 2023, alleging that the petitioner engaged in domestic violence in the children's presence, abused substances, and subjected the children to unsanitary living conditions and to drug abuse/a drug-endangered environment. The DHS became involved following an incident of domestic violence between the petitioner and the father of W.W. and P.W. A Child Protective Services ("CPS") worker subsequently found the petitioner's home to be in deplorable condition during an unannounced visit. The petitioner also appeared to be under the influence of substances and was unable to perform basic parenting tasks. The CPS worker requested that the petitioner submit to a drug screen which was positive for amphetamine and methamphetamine.

The court held an adjudicatory hearing in October 2023. The petitioner submitted a written stipulation, which the court thoroughly reviewed with her on the record ensuring that she understood and agreed with each term contained therein. The petitioner stipulated that she had been a victim of domestic violence in the children's presence, tested positive for amphetamine and methamphetamine, and had a substance abuse problem that led to the children's neglect. For those

---

[1] The petitioner appears by counsel Marci R. Carroll, who filed a brief in accordance with Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure and also moved for leave for the petitioner to file a supplemental brief. The Court granted this motion in January 2025, and the petitioner subsequently submitted a self-represented brief raising additional assignments of error. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Dreama D. Sinkkanen appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

reasons, the court adjudicated the petitioner as a neglectful parent and K.F., W.W., and P.W. as neglected children. The stipulation also listed "the manner in which [these] problems and deficiencies" would be addressed, including, among other things, that the petitioner would submit to random drug testing, participate in parenting classes and individual therapy, follow her service providers' recommendations, and provide honest information to the multidisciplinary team ("MDT"). The petitioner subsequently filed a written motion for a post-adjudicatory improvement period, in which she "fully acknowledge[d] the need for[] [d]rug and alcohol treatment as recommended by the MDT" in addition to the conditions previously enumerated in her stipulation. At a hearing in November 2023, the court granted the petitioner's motion and ordered the DHS to submit a family case plan setting forth the improvement period's terms and conditions. A family case plan was never filed.

The circuit court held a dispositional hearing in October 2024. Prior to this, the petitioner moved for a post-dispositional improvement period. In support of her motion, the petitioner testified that she had stopped taking prescription lithium in July 2024 (after it caused her to fall asleep during a supervised visit) and was participating in online substance abuse support meetings as well as intensive outpatient treatment, though she had "missed a few" sessions. The petitioner initially expressed confusion about whether the court had granted her a post-adjudicatory improvement period but later acknowledged she had "been on an improvement period this past year." She admitted to using methamphetamine "a handful of times," which she understood was a violation of its terms. The petitioner also acknowledged that her improvement period required her to follow the MDT's recommendations, but when the MDT requested that she attend inpatient treatment she interpreted this as a "suggestion." When asked about a July 2024 drug screen that was positive for amphetamine and methamphetamine, the petitioner explained that she had relapsed and was "taking care of it." When asked if she had a problem with methamphetamine use, the petitioner replied, "No, I had a relapse and I'm good. I've been getting help." However, the petitioner admitted that she did not disclose her relapse in the MDT meetings and previously denied using methamphetamine, attributing her positive screen in July 2024 to "stepp[ing] on a meth pipe." The petitioner also testified that "[the children] never should have been taken in the first place." The petitioner claimed that this statement—and the similar statements she made to service providers throughout the proceedings—had been taken "completely out of context." Her attorney asked if she had parenting deficiencies that necessitated the court's intervention and the petitioner replied, "yes" without elaboration.

Multiple witnesses testified to the petitioner's denials of substance abuse and statements regarding the children's removal. The parenting services provider testified that the petitioner was aware of her positive screens but "typically would deny that they were positive," claiming one was "a false positive" and another might have been due to "an excess amount of medication." The petitioner told this provider that the children should not have been removed from her care, a contention which the provider testified that they "work[ed] on" in sessions. A CPS worker testified that the petitioner also indicated to her that the children should not have been removed and denied using methamphetamine when confronted with the results of her drug screens. The CPS worker (and the MDT) recommended that the petitioner attend inpatient treatment, but the petitioner declined this service on multiple occasions, continuing to say that she did not have a drug problem. When the petitioner finally attempted to be admitted to inpatient treatment, her last positive drug screen was more than thirty days old, which prevented her from being accepted. A counselor with

the petitioner's intensive outpatient treatment program stated that the petitioner acknowledged substance abuse in their sessions but had missed eight (out of eighteen) meetings. The petitioner submitted excuses for many of her absences, but not all.

Several witnesses also testified to issues regarding the petitioner's supervised visits. One visitation supervisor testified that she had to end a visit in July 2024 after the petitioner fell asleep "in an upright position." When the CPS worker subsequently asked the petitioner about this visit, the petitioner claimed she had been exhausted because the DHS had scheduled visits with the children on two consecutive days which "stress[ed] her out." Another visitation supervisor testified that she ended a visit in August 2024 due to concern that the petitioner was under the influence. The petitioner later attributed her behavior at that visit to her prescribed lithium and told the supervisor that she "stopped taking it." The petitioner also expressed several times to this supervisor that the children should not have been removed. A final visitation supervisor testified that the petitioner had not utilized the full amount of time allotted for her recent visits with K.F., choosing to end two visits early. Ultimately, the CPS worker noted that it had been fifteen months since the children's removal, and, despite participating in services throughout that time, the petitioner had not progressed sufficiently to extend the length of her supervised visits. She further testified that, given the petitioner's denial of her role in the children's removal, there were no other services the DHS could offer to help the petitioner correct her parenting deficiencies. Thus, the DHS recommended terminating the petitioner's rights.

Based on this evidence, the circuit court terminated the petitioner's parental and custodial rights.[3] In support, the court found that the petitioner tested positive for illegal substances four times between November 2023 and July 2024. Nevertheless, the petitioner denied her drug use "to various parties to this case for several months," only admitting at disposition that she relapsed and had used methamphetamine during her improvement period. Moreover, the court stated that it "appear[ed] . . . that the [petitioner] [was] unable or unwilling to fully parent [the] children" during supervised visits, as she could not manage even one child for an extended period. Most importantly, despite the petitioner's claim that she had been misunderstood, the court found that she "continue[d] to state that the children should never have been removed from her care." The court concluded that the petitioner's adamant and continued denials rendered the problems giving rise to the petition "untreatable," and found that, despite receiving services for over a year, she had "made little to no progress in correcting the conditions of abuse and neglect that led to the [children's] removal." The issue was not the petitioner's participation (as "there is no argument that the [petitioner] . . . participated in services throughout this case") but rather her "continued failure . . . to acknowledge that . . . neglect of the . . . children actually occurred on her part or that she needs to do anything further to correct it." Given the petitioner's "inability or unwillingness to acknowledge the full extent of her problems and deficiencies"—beyond "a token acknowledgement" of "some minor parenting deficits"—the court denied the petitioner's motion for a post-dispositional improvement period finding it would be an exercise in futility at the children's expense. For the same reasons, the court concluded that there was no reasonable

---

[3] As K.F.'s father is deceased, the permanency plan is for the child to be adopted in the current placement. J.W., the father of W.W. and P.W., was reunited with both children after successfully completing an improvement period. The permanency plan for W.W. and P.W. is to remain in J.W.'s custody.

likelihood that the conditions of neglect and abuse could be substantially corrected in the near future. The court also found the children's welfare required termination, since "in the absence of recognition by a parent that . . . neglect has occurred, the children remain[] at risk and it is not safe to return the children to that parent." It is from this dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner asserts that because the DHS failed to file a family case plan, the circuit court erred in denying her motion for a post-dispositional improvement period and terminating her rights. The petitioner is correct that the DHS must file a family case plan within thirty days after a court has granted an improvement period. *See* W. Va. R. P. Child Abuse & Neglect Proc. 37; W. Va. Code § 49-4-408. It is undisputed that this did not occur below. However, the petitioner fails to establish how this error prejudiced her. Her stipulation to neglecting the children by exposing them to domestic violence and to her substance abuse specifically included the manner in which she was required to address her deficiencies, including random drug screening, individual therapy, and parenting classes. The record shows that the court carefully reviewed these terms with the petitioner at adjudication, ensuring that she understood what was required for her to correct the conditions for which she was adjudicated. The petitioner again acknowledged these terms, in addition to her need for substance abuse treatment, in her motion for a post-adjudicatory improvement period. And while the petitioner argues on appeal that she was confused as to what was expected of her and unaware that the court had granted her a post-adjudicatory improvement period, her testimony at disposition makes clear that she understood she had been on an improvement period and that her methamphetamine use violated its terms. The petitioner also participated in MDT meetings and discussions with her CPS worker during which concerns about her substance abuse (and the services they recommended to address it) were raised. This Court has held that "[t]he purpose of the family case plan . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 2, in part, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003) (quoting Syl. Pt. 5, *State ex rel. W.Va. Dep't of Hum. Servs. v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987)). Because the facts of this case indicate that the petitioner was well aware of the problems that she needed to correct to regain custody of the children, we find that vacating the court's dispositional order due to the DHS's failure to file a family case plan is not warranted. *See* Syl. pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001) (requiring vacation of dispositional orders when the process of abuse and neglect proceedings has been "substantially disregarded or frustrated"); *see also In re H.D.*, No. 23-148, 2024 WL 4503958, at *4 (W. Va. Oct. 16, 2024) (memorandum decision) (affirming termination of parental rights where the DHS failed to file a case plan where the petitioner "knew what was required to successfully address the conditions of abuse and neglect").

Ultimately, the circuit court's denial of the petitioner's motion for a post-dispositional improvement period and termination of her rights did not stem from her lack of participation in the services designed to help her remedy the conditions of neglect. Indeed, the court noted the petitioner's participation with services, but we have explained that "the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Rather,

in imposing disposition the court cited the petitioner's continued belief that the children should not have been removed from her care in the first place, as well as her unwillingness to fully acknowledge her deficiencies, in concluding that a post-dispositional improvement period would be futile and that there was no reasonable likelihood that the conditions of neglect could be substantially corrected. As we have stated, "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged . . . neglect . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). While the petitioner claimed to accept responsibility at times, she also repeatedly denied abusing substances and indicated a belief that her conduct had not warranted the children's removal. As such, the petitioner "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." W. Va. Code § 49-4-604(d) (defining "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected"). Further, the circuit court found, upon ample evidence, that termination was necessary for the children's welfare. Circuit courts are permitted to terminate parental rights upon these findings. *See id.* § 604(c)(6). As such, we conclude that the circuit court did not err in terminating the petitioner's parental and custodial rights.[4]

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 12, 2024, order is affirmed.

Affirmed.

**ISSUED**: November 4, 2025

**CONCURRED IN BY**:

Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

---

[4] The petitioner raises an additional assignment of error alleging that the DHS failed to fulfill its responsibility to provide services due to its poor communication and failure to hire proper service providers, among other things. However, the petitioner does not cite to when or how these claims were raised in the circuit court. *See* W. Va. R. App. P. 10(c)(7) (requiring the petitioner's brief to include "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal"). Moreover, to the extent that the petitioner seeks to advance an ineffective assistance of counsel claim as an assignment of error, we decline to address that argument. This Court has not recognized a claim for ineffective assistance of counsel in the context of abuse and neglect matters. *See In Re H.C.*, No. 12-0471, 2012 WL 4838995 (W. Va. Sept. 24, 2012) (memorandum decision) (noting that this Court has never recognized such a claim); *In re J.F.*, No. 12-0097, 2012 WL 4069520 (W. Va. Sept. 7, 2012) (memorandum decision) (declining to recognize a claim for ineffective assistance of counsel in the context of an abuse and neglect case).

**NOT PARTICIPATING:**

Chief Justice William R. Wooton