# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **J.P.-1 and J.P.-2**

**No. 25-171** (Kanawha County CC-20-2023-JA-435 and CC-20-2023-JA-436)

## MEMORANDUM DECISION

Petitioner Mother C.M.[1] appeals the Circuit Court of Kanawha County's February 7, 2025, order terminating her parental rights to J.P.-1 and J.P.-2, arguing that the court erred in failing to determine whether she was a "battered parent" at adjudication, finding aggravated circumstances, and terminating her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in November 2023 alleging that the children were hospitalized with severe, nonaccidental injuries and that the petitioner had been charged criminally as a result.[3] According to the petition, a Child Protective Services ("CPS") worker visited the hospital and observed J.P.-1, then one year old, in the surgical trauma intensive care unit. J.P.-1's head was swollen, he had bruising on his face and two black eyes, he was missing small patches of hair, and he had a broken clavicle. J.P.-2, then three years old, was very withdrawn and had swollen and busted lips, raw patches on his neck, and scratches and small wounds around his ears. The DHS alleged that the petitioner told the CPS worker that she recently became suspicious that her boyfriend, D.C., was hurting the children. The petitioner reportedly said that a few days prior, she noticed that J.P.-1 had two black eyes and that J.P.-2 had bruises on his face; that the children had busted lips that would bleed after she left them alone with D.C.; and that on one occasion, she noticed J.P.-2's neck was raw after he was alone with D.C. When the petitioner asked D.C. about these injuries, he reportedly said that the children were "self-harming." According to the petition,

---

[1] The petitioner appears by counsel Sophia D. Mills. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Carl E. Hostler. Counsel Matthew Smith appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because the children share the same initials, we use numbers to differentiate them.

[3] The petition alleges that the petitioner was arrested for felony child abuse. However, it appears from the record that the petitioner was charged with felony child neglect creating substantial risk of bodily injury.

the petitioner also informed the CPS worker that D.C. was physically abusive to her, would not let her leave the apartment, and broke her phone so she could not make any calls. The petitioner stated that on November 20, 2023, she found D.C. shaking J.P.-2, but D.C. claimed that he was playing with the child. The DHS alleged that on November 21, 2023, D.C. broke several things in the apartment and fled. Thereafter, the police were called, the children were brought to the hospital for severe injuries, and the petitioner was arrested.

The circuit court held the preliminary hearing in December 2023. A CPS worker testified to the children's severe injuries as outlined in the petition. In addition to the observed injuries, the CPS worker testified that there was an indication that J.P.-1 had a previous brain bleed and his treatment providers were concerned that he may have a second brain bleed. Further, both children were severely underweight. The CPS worker testified that the petitioner had informed the worker that J.P.-1 had been taken to the hospital for a brain bleed in New Mexico a few weeks prior to the incidents giving rise to the petition.[4] Further, the petitioner told the CPS worker that D.C. moved into her home in late November 2023, shortly before the petition was filed, and that is when she started seeing injuries to the children. The CPS worker testified that the petitioner did not attempt to force D.C. to leave the home and that the only medical attention the petitioner gave the children was putting Vaseline on a raw spot on J.P.-2's neck. Further, the CPS worker testified that the petitioner left J.P.-2 in the care of D.C. while she went to a doctor's appointment.

The circuit court presided over both the petitioner's adjudicatory hearing and plea hearing in her related criminal case. The adjudicatory hearing occurred first, and the petitioner stipulated to failure to protect the children from physical abuse and requested the court to find that she was a "battered parent." The court permitted the petitioner to present evidence on the battered parent issue, and she testified that D.C. was physically, emotionally, and sexually abusive. The court then accepted the petitioner's stipulation and found that the petitioner was an abusing and neglecting parent and that J.P.-1 and J.P.-2 were abused and neglected children. The court did not make findings regarding the petitioner's status as a battered parent, but it held the issue open and ordered the petitioner to undergo a parental fitness evaluation with specific findings regarding domestic violence. The court also was aware at the adjudicatory hearing that the petitioner intended to enter a guilty plea in the criminal case. Shortly thereafter, the petitioner pled guilty to felony child neglect creating substantial risk of bodily injury and was sentenced on November 12, 2024.

The petitioner completed a psychological evaluation in August 2024.[5] The evaluating psychologist reported that the petitioner had an "apparent failure to act in an appropriate protective manner," which was "strongly suggestive of a general lack of attachment of the children." Further, the psychologist gave the petitioner a poor prognosis for parental improvement because of her attachment-related problems, the severity of the abuse, the petitioner's history of involvement with multiple partners who compromised the well-being of the children, her "profoundly poor social judgement," and her defensive responses.

---

[4] The record indicates that the petitioner moved from West Virginia to New Mexico, where D.C. lived, for one month in the fall of 2023, then moved back to West Virginia.

[5] It does not appear that the psychological evaluation included specific findings regarding domestic violence, as directed by the court.

The circuit court held a dispositional hearing in December 2024, during which the court took judicial notice of the testimony at the preliminary hearing. A CPS worker testified that the petitioner had only contacted him once since June 2024. Significantly, the petitioner did not contact the CPS worker during the time she was released on bond. Further, the CPS worker testified that the petitioner pled guilty to felony child neglect and that her sentence included extended supervised release for twenty years (the court also took judicial notice of the amended sentencing order). One condition of the petitioner's supervision was a bar to residing with or exercising visitation with any minors, including J.P.-1 and J.P.-2, without further order from the criminal court. The DHS recommended termination of the petitioner's parental rights. Next, the petitioner testified that she had a projected release date of September 18, 2026, would be on supervised release for twenty years, and would be required to register with the West Virginia Central Abuse Registry for ten years. Further, the petitioner stated that D.C. was controlling and abusive toward her, that she was afraid of him, and that she did not perpetrate the abuse of the children. When asked why she pled guilty to felony child neglect, the petitioner stated that "the only accountability that I can take is that I made the poor decision of being with [D.C.]" but that she "couldn't take any more accountability than that."

At the conclusion of the dispositional hearing, the circuit court found that this case was one of aggravated circumstances due to the children's severe physical and emotional abuse, the petitioner's failure to protect the children, and the petitioner's conviction. Further, although the petitioner claimed that D.C. was the sole perpetrator of the abuse, the court found that the petitioner "certainly participated and acquiesced in it" and that the abuse was so severe that "it will take years for the [children] to recover physically and emotionally, if possible." Also, the court found that the petitioner was evasive during her testimony regarding D.C.'s abuse of the children and that it was "hard to reconcile [the petitioner's] actions and injuries the children sustained as detailed in the medical records." Ultimately, the court found that there was no reasonable likelihood that the petitioner could correct the conditions of abuse and neglect given her "lack of motivation" to acknowledge and correct the circumstances that led to the filing of the petition. Further, the court found that the children's best interests required termination of the petitioner's parental rights. Accordingly, the court terminated the petitioner's parental rights to both children.[6] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, the petitioner argues that the circuit court committed reversible error in failing to determine whether she was a battered parent. We disagree. This Court has held that when a parent asserts that she or he is a battered parent under West Virginia Code § 49-1-201, "the circuit court must allow for the presentation of evidence on that issue" and must "make findings of fact and conclusions of law as to whether the respondent parent meets the statutory definition of a 'battered parent.'" Syl. Pt. 3, in part, *In re J.F.-1*, 252 W. Va. 439, 923 S.E.2d 369 (2025). Here, the court allowed the petitioner to present evidence at

---

[6] The parental rights of J.P.-1's unknown father were also terminated. The permanency plan for J.P.-1 is adoption in his current placement. The father of J.P.-2 is nonabusing, and the permanency plan for that child is to remain with his father.

adjudication on whether she was a battered parent and held the issue open to allow further evidence through a psychological evaluation. Critically, at disposition and after a psychological evaluation was completed, the court found that the petitioner "certainly participated and acquiesced" in the abuse of the children. West Virginia law is clear that a "battered parent" is defined as one "who has been adjudicated by the court *to have not condoned the abuse or neglect* and *has not been able to stop the abuse or neglect* of the child . . . due to being a victim of domestic violence." W. Va. Code § 49-1-201 (emphasis added). The circuit court's findings that the petitioner herself perpetrated and condoned the abuse precludes her from being designated as a battered parent. Therefore, the petitioner is entitled to no relief in this regard.

Next, the petitioner argues that the circuit court erred by finding that aggravated circumstances existed in this case. We disagree. West Virginia Code § 49-4-604(c)(6)(C)(iv) requires circuit courts to determine whether the DHS made "reasonable efforts to preserve and reunify the family." However, the DHS is relieved of this duty if the court determines that "[t]he parent has subjected the child . . . to aggravated circumstances which include . . . chronic abuse." *Id*. § 604(c)(7)(A). Further, a parent can subject a child to abuse, even when the abuse is inflicted by another individual. W. Va. Code § 49-1-201 (defining an "abused child" as one whose parent "knowingly or intentionally inflicts . . . or *knowingly allows* another person to inflict, physical injury or mental or emotional injury" upon them) (emphasis added); *see also* Syl. Pt. 2, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993) (noting that the relevant statute, in part, defines "abused child to include one whose parent knowingly allows another person to commit the abuse" (quoting Syl. Pt. 3, *In re Betty J.W.*, 179 W. Va. 605, 371 S.E.2d 326 (1988))). Considering the evidence presented, including that of J.P.-1's injuries of various ages, the severity of the children's non-accidental injuries while in the petitioner's care, the petitioner's stipulation, and the petitioner's conviction, the circuit court appropriately found that the DHS was relieved of its duty. Therefore, the circuit court did not err in finding that the petitioner's conduct subjected the children to aggravated circumstances.

Lastly, the petitioner argues that the circuit court erred in terminating her parental rights instead of imposing a less restrictive dispositional alternative.[7] It is well established that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Here, ample evidence supports the court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. The evidence presented

---

[7] On appeal, the petitioner makes passing reference to error by the circuit court in denying her motion for a post-adjudicatory improvement period. However, she provides no argument in support of these assertions nor any applicable authority on the issue, thereby failing to comply with Rule 10(c)(7) of the Rules of Appellate Procedure. Indeed, as we have explained, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). Accordingly, we will not address these unsupported assertions.

establishes that the children sustained severe and extensive injuries while in the petitioner's care, that the petitioner failed to adequately communicate with the DHS during the case, that she was not forthcoming regarding D.C.'s abuse of the children, and that the terms of the petitioner's extended supervised release currently prevent her from exercising visitation with the children for the remainder of their childhood. Further, as the circuit court noted, the petitioner was evasive and failed to fully acknowledge her own wrongdoing. As we have explained, "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Additionally, the circuit court found that the best interests of the children required termination of the petitioner's parental rights, a finding which the petitioner fails to challenge on appeal. Courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (allowing a court to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse and be substantially corrected in the near future and[] when necessary for the welfare of the child"). As such, we decline to disturb the circuit court's decision.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 7, 2025, order is hereby affirmed.

Affirmed.

**ISSUED:** April 21, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

5