**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.E., C.E., and S.E.**

**No. 25-525** (Taylor County CC-46-2023-JA-4, CC-46-2023-JA-5, and CC-46-2023-JA-6)

**MEMORANDUM DECISION**

Petitioner Father K.E.[1] appeals the Circuit Court of Taylor County's July 15, 2025, order terminating his parental rights to B.E., C.E., and S.E., arguing that the court erred by failing to impose the least restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In March 2023, the DHS filed a petition alleging that the petitioner abused and neglected the children by engaging in domestic violence against the mother in the children's presence and by placing the children in harm's way as a result of his failure to properly supervise them. Specifically, the DHS alleged that it had received multiple referrals after then-seven-year-old S.E. and then-six-year-old C.E. (both of whom have special needs) left the home unsupervised. Further, the DHS recounted that the mother pled guilty to driving under the influence ("DUI") with the children in the car.

The circuit court held an adjudicatory hearing in May 2023. The mother stipulated to the allegations contained in the petition and testified that the petitioner was at home while she drank alcohol and took medication, including the petitioner's Adderall, immediately prior to her DUI arrest and that he expressed that he did not think it was a good idea for her to leave with the children. Following this, the petitioner stipulated to engaging in domestic violence in the children's presence and stated that he believed that the mother's testimony was accurate. Based upon the parties' admissions, the court adjudicated both parents of abusing and neglecting the children by exposing them to domestic violence and failing to properly supervise them. The court ordered both parents to participate in drug and alcohol testing and granted them post-adjudicatory improvement

---

[1] The petitioner appears by counsel Jeremy B. Cooper. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Mary S. Nelson appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

periods, which were extended by three months in January 2024.[3] The court subsequently granted the parents six-month post-dispositional improvement periods in May 2024 and returned the children to the home in June 2024.

On December 3, 2024, the guardian filed a report detailing that, in September 2024, C.E. again left the home and was located half a mile away by a bystander, who called the police. Following this incident, the petitioner repeatedly tested positive for marijuana and once tested positive for methamphetamine, all of which he denied using. On December 23, 2024, the DHS filed an amended petition asserting that the petitioner's substance abuse negatively affected his ability to parent. At the February 2025 adjudicatory hearing on the amended petition, the petitioner denied using marijuana or methamphetamine, but claimed that he used CBD products to alleviate symptoms of attention deficit hyperactivity disorder. Based upon the evidence presented, the court adjudicated the petitioner of neglecting the children, in part, upon his substance abuse and highlighted the inconsistencies in his testimony, ultimately concluding that he was "not a credible witness."

At the dispositional hearing in April 2025, the circuit court heard testimony from a police officer who responded to a September 2024 9-1-1 call regarding C.E.'s elopement. The officer described the report of C.E. running down a roadway half a mile from his home in a t-shirt and underwear and that the petitioner did not know then-two-year-old B.E.'s whereabouts when questioned, with the child being found unsupervised in the backyard. The officer also represented that he was told that the mother was doing laundry upstairs at the time and believed that the petitioner was watching the children. The court then heard from a Child Protective Services ("CPS") worker, who stated that, despite being a requirement of the family case plan, the petitioner never participated in any domestic violence therapy or couples' therapy. Further, in spite of the installation of locks on outside doors and the backyard gate, the CPS worker testified that the children had access to the keys and there were unsecure portions of the fence, which led to C.E.'s elopement in September 2024. The CPS worker stated that the combination of the new elopement, the petitioner's positive drug screens and continued denial of substance abuse, and the petitioner's failure to remedy the original conditions of abuse and neglect supported termination of his parental rights. Finally, the petitioner acknowledged his adjudication based on substance abuse but claimed that he was unaware of the extent of his original adjudication, stating that he only made admissions because he was facing criminal proceedings and he and the mother "were fighting like cats and dogs." The petitioner stated that, while he was offered services for substance abuse, he declined those services because he felt they were unnecessary and again denied the allegations of substance abuse, stating that he had not had a positive drug screen since November 2024. The petitioner asserted that he did not place C.E. in harm's way by failing to supervise him.

Ultimately, the circuit court found that the petitioner failed to acknowledge his abuse and neglect of the children and never attempted to mitigate his actions. The court further found that the petitioner failed to rectify the conditions of abuse and neglect established at both adjudicatory hearings and that the continuation of these conditions threatened the children's health, welfare, and

---

[3] The terms and conditions of any of the petitioner's improvement periods are not apparent from the record.

safety. Based upon these findings, the court concluded that there was no reasonable likelihood that the petitioner could correct the conditions of abuse and neglect within a reasonable period of time, as he demonstrated an incapacity to solve the conditions on his own or with help. After considering alternative dispositions and the best interests of the children, the court further determined that termination of the petitioner's parental rights was appropriate and subsequently entered an order terminating the petitioner's parental rights to B.E., C.E., and S.E.[4] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating his parental rights, asserting that the evidence supported a less restrictive alternative. We disagree. It is well established that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). West Virginia Code § 49-4-604(d) provides that there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" when "the abusing adult . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Such a finding may be made when either "[t]he abusing parent . . . ha[s] habitually abused . . . controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and . . . ha[s] not responded to . . . the recommended and appropriate treatment" or where the parent "ha[s] not responded to or followed through with . . . rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect . . . , as evidenced by the continuation or insubstantial diminution of conditions." *Id.* § 604(d)(1), (3). Here, the evidence presented at the dispositional hearing substantially supported the existence of both situations. Even after being placed on notice that his failure to supervise the children threatened their safety, and being provided two improvement periods, the petitioner again allowed C.E. to elope from the home just a few months after reunification. Around this same time, the petitioner began testing positive for marijuana and methamphetamine. Despite this, the petitioner denied services offered to treat his substance abuse and asserted that neither his failure to supervise the children nor his substance abuse posed a risk to the children, rendering these problems untreatable. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)) (explaining that a parent's failure to acknowledge the problems of abuse and neglect "results in making the problem untreatable"). Furthermore, the circuit court found that the petitioner's failure to correct the conditions of abuse and neglect threatened the children's health, welfare, and safety and found that their best interests required termination of the petitioner's rights. Accordingly, we conclude that the circuit court did not err in terminating the petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 15, 2025, order is hereby affirmed.

---

[4] The mother's custodial rights to the children were terminated based upon her voluntary relinquishment. The permanency plan for the children is legal guardianship in their current kinship placement.

3

Affirmed.

**ISSUED**: June 1, 2026


**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4