**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.G. and M.A.**

**No. 25-453** (Greenbrier County CC-13-2023-JA-68 and CC-13-2023-JA-69)

## MEMORANDUM DECISION

Petitioner D.W.,[1] who is the children's grandmother and legal guardian, appeals the Circuit Court of Greenbrier County's June 11, 2025, order terminating her guardianship rights to J.G. and M.A., arguing that the court erred in failing to grant a less restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in October 2023, alleging that D.W. neglected M.A. and her half-brother, J.G., due to her failure to supervise them.[3] The DHS alleged that J.G., then eleven years old, stole a gun and several bicycles, roamed Rainelle for hours unsupervised, and was expelled for bringing a knife to school. During a visit to the home, a Child Protective Services ("CPS") worker observed M.A., who was five years old, running down the street by herself. Further, the DHS alleged that M.A. remained largely unsupervised and went to neighbors' houses while the petitioner slept. The petitioner allegedly told a CPS worker that J.G. was supposed to attend an alternative school for one hour per week, but he had not been going to school because the teacher did not have the needed materials. Further, the petitioner said that J.G. would leave the home daily and she did not know where he was. A CPS worker also spoke with community members in Rainelle who were concerned for J.G. because he roamed the city alone and winter was approaching. The community members allegedly told CPS that they regularly fed J.G. because he was hungry. Later in October, the petitioner admitted to CPS that J.G. continued to leave the home every day and that, on one occasion, he was picked up in a vehicle by an unknown person.

The circuit court held an adjudicatory hearing in December 2023 where the petitioner stipulated that she neglected the children by failing to properly supervise them. Therefore, the

---

[1] The petitioner appears by counsel Carrie F. DeHaven. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather Olcott. Counsel Michael R. Whitt appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] D.W. was appointed as the children's legal guardian in May 2021.

1

court adjudicated the petitioner of neglect and J.G. and M.A. as neglected children. At a hearing in January 2024, the court granted the petitioner's written motion for a post-adjudicatory improvement period, the terms of which included that the petitioner maintain employment and financial stability, fully participate in psychological and substance abuse treatment, follow the recommendation of the psychological evaluation, remain drug and alcohol free, participate in random drug and alcohol screens, participate in parenting and adult life skills classes, participate in MDT meetings, and visit with the children.

The circuit court held a dispositional hearing in June 2025. The psychologist who completed the petitioner's parental fitness evaluation testified that she had a poor prognosis for her ability to care for the children and success for future treatment. The psychologist explained that the petitioner avoided dealing with her psychological issues and had an increased probability that she would terminate mental health treatment. The psychologist also opined that this type of behavior was common with someone who is abusing drugs and alcohol and that there were indications during the petitioner's evaluation that she was overusing medication. Next, a worker at the Greenbrier County Day Report Center testified that the petitioner missed forty-five out of sixty-five drug screens. Further, the petitioner tested positive for benzodiazepines several times and tested positive for oxycodone in March 2025. The petitioner informed the worker that she had a prescription for oxycodone but did not indicate that she had a prescription for any benzodiazepine. However, the petitioner's most recent drug screen, on April 10, 2025, was negative for all substances. The children's permanency social worker testified that both of the children had refused visitation with the petitioner since February 2025. Further, the social worker testified that the petitioner had a phone call in May 2025 with J.G. and M.A. that escalated into an argument and the petitioner threatened to remove them from the foster home. The social worker stated that both children were extremely upset by this conversation (M.A. was "sobbing hysterically") and that further contact with the petitioner would harm the children. Next, a CPS supervisor testified that the petitioner somewhat participated in her improvement period, but did not engage in any therapy, sporadically participated in drug screens, and did not consistently participate in supervised visitation.[4] Therefore, the witness testified that the DHS was recommending termination of the petitioner's guardianship rights to the children.

The petitioner testified that she substantially complied with the terms of her improvement period because she maintained financial stability, had appropriate housing, participated in the psychological evaluation and therapy, intended to maintain therapy, and regularly visited with the children before February 2025. The petitioner admitted that she did not complete all requested drug tests but claimed that she did not have adequate transportation. Additionally, when questioned why she recently tested negative for oxycodone despite having a prescription she was to be taking regularly, the petitioner claimed that she did not know and denied overusing her oxycodone medication. The petitioner also testified that she had just started therapy the week before because the children's removal negatively affected her mental health. Finally, the petitioner stated that the

---

[4] The witness also explained that the petitioner received parenting and adult life skills services but, at some point, there was a lapse in this service due to provider issues. However, the DHS requested that the parenting and adult skills service resume after notification that it had ceased.

main issue in this case was that J.G. "wouldn't listen" and that her parenting skills are the same as they were when the petition was filed.

The circuit court found that the petitioner "demonstrated an unwillingness and inability to comply with services" offered to her and that she refused to cooperate with the terms of her improvement period. The court also found that the petitioner refused "to acknowledge any need for change or improvement in her parenting." Ultimately, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in a reasonable period of time and that termination of the petitioner's rights was necessary for the welfare of the children. Therefore, the court terminated the petitioner's guardianship rights[5] to J.G. and M.A. It is from the dispositional order that the petitioner appeals.[6]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating her rights and not ordering a less restrictive dispositional alternative. However, we have held that "[t]ermination of parental rights[7] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). According to West Virginia Code § 49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes when "[t]he abusing parent [or guardian]. . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Here, the circuit court's finding that there was no reasonable likelihood such conditions could be corrected in the near future is supported by the record. Evidence was presented that the petitioner did not participate in forty-five drug screens, did not begin therapy until one week before disposition, and refused to acknowledge her own wrongdoing. As we have explained, "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Additionally, the court found that termination of the petitioner's guardianship rights was necessary for the welfare of the children. Courts are permitted to terminate parental rights, including guardianship rights, upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (allowing a court to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the

---

[5] The court actually terminated the petitioner's "custodial and parental rights." However, because the record demonstrates that the petitioner exercised guardianship rights to the children, we will refer to the circuit court's termination as one of guardianship rights.

[6] The parental rights of the parents to both children were also terminated. The permanency plan for the children is adoption in the current foster placement.

[7] Although the petitioner was the child's guardian, rather than parent, the dispositional requirements of West Virginia Code § 49-4-604(c)(6) apply when a court terminates "parental, custodial and guardianship rights" as the result of abuse and neglect proceedings.

conditions of neglect or abuse and be substantially corrected in the near future and[] when necessary for the welfare of the child"). As such, we decline to disturb the circuit court's decision.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 11, 2025, order is hereby affirmed.

Affirmed.

**ISSUED:** June 1, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III